# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| BARRY MUKAMAL, | ) | CASE NO. _____ |
| | ) | |
| as Trustee of the MUTUAL BENEFITS | ) | |
| KEEP POLICY TRUST, | ) | |
| 1000 South Federal Highway, Suite 200 | ) | |
| Fort Lauderdale, FL 33316 | ) | |
| | ) | |
|       Plaintiff, | ) | JUDGE |
| | ) | |
| v. | ) | |
| | ) | |
| COLUMBUS LIFE INSURANCE CO., | ) | COMPLAINT |
| c/o Registered Agent, Jonathan D. Niemeyer, | ) | |
| 400 Broadway, MS 32 | ) | |
| Cincinnati, Ohio 45202 | ) | |
| | ) | |
|       Defendant. | ) | |

Now comes Plaintiff, Barry Mukamal, in his capacity as the Trustee of the Mutual Benefits Keep Policy Trust ("Trustee" or "Plaintiff"), by and through counsel, and as his Complaint against Defendant, Columbus Life Insurance Co. ("Columbus Life" or "Defendant") alleges as follows:

## COUNT ONE
## (Breach of Contract)

1. The Mutual Benefits Keep Policy Trust (the "Trust") is a trust established under Florida law and based in Florida.

2. Plaintiff Barry Mukamal, acting in his capacity as Trustee of the Trust, is a citizen and resident of the State of Florida.

3. Defendant Columbus Life is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

1

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this controversy involves citizens of different states and the amount in controversy exceeds $75,000 (exclusive of interest and costs).

5. Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue properly lies in the Southern District of Ohio because Columbus Life is subject to the Court's personal jurisdiction and because a substantial part of the events or omissions giving rise to the Trust's claims occurred in that district, including the negotiation of the life insurance contract and Columbus Life's subsequent breach of the contract.

6. This Court has personal jurisdiction to render judgment against Columbus Life because it is a corporation that is organized under Ohio law whose principal places of business is in Ohio. Therefore, this Court may exercise general personal jurisdiction over Columbus life.

7. Columbus Life is also subject to this Court's specific personal jurisdiction pursuant to Ohio Rev. Code Ann. § 2307.382(1), (2), and (9), because the Trust's claims arise from the company's acts, personally or through its agent, of:

(a) transacting business in Ohio;

(b) contracting to supply services in Ohio; and

(c) contracting to insure James Croft, who was located within Ohio at the time of contracting.

8. On November 5, 1998, James Croft filled out a life insurance application with Columbus Life.

9. Columbus Life agreed to insure Croft as the insured for $3 million (subject to a rider provision). A copy of the Croft Policy, dated December 10, 1998, is attached as Exhibit 1.

2

10. Among its many provisions, the Croft Policy provides that the "owner" of the policy may be "later changed." The original owner of the Croft Policy was Daniel Croft, James Croft's son.

11. A year after the policy went into effect, Daniel Croft transferred his ownership interest to Capital 1, LLC. The policy beneficiary was changed to CRG Remainder Trust.

12. Thomas LaRussa served as the president of Capital 1, LLC and CRG Remainder Trust. LaRussa was also the president of Capital Resource Group.

13. All three entities were eventually placed into a collective receivership and since then have been referred uniformly as "CRG."

14. In 2001, Tony Alberti acquired LaRussa's interest in CRG, including the Croft Policy.

15. In 2002, Alberti entered into a settlement agreement with Cannella Response Television, Inc. ("Cannella"), which provided that Alberti collaterally assign the Croft Policy to Cannella.

16. Columbus Life Insurance received notice of the collateral assignment and acknowledged the collateral assignment, signing a document called an "individual verification of coverage."

17. The "individual verification of coverage" document had a section reserved for a Columbus Life representative to mark off whether there were are "any other liens, assignments, or other liens against the policy to which you have been notified."

18. In light of the collateral assignment to Cannella, the Columbus Life representative checked the yes box and had noted that the Croft Policy had been "assigned to[] Cannella Response Television, Inc."

19. A few months later, Alberti requested a loan from Columbus Life Insurance for $111,316.99 made payable directly to Cannella in satisfaction of the settlement of $107,500 plus interest.

20. Cannella received the payment and released its interest in the Croft Policy.

21. In fact, in a related suit, Cannella admitted that it released its interest on the Croft Policy. *See Wuliger v. Cannella Response Television, Inc.*, 865 F. Supp. 2d 836, 840 (N.D. Ohio 2011).

22. On March 3, 2003, a district judge in the Northern District of Ohio approved the sale and transfer of the Croft Policy from the CRG receiver to the Mutual Benefits Corporation. The court, "[h]aving considered the terms of the sale of said policies, ordered the sale of the [Croft Policy] to be free and clear of any liens, claims and interests." The court stated that the Columbus Life Insurance Company "shall . . . effect the necessary transfer of title and beneficial interests in the polic[y]." "[A]ny third parties including the issuing insurance company," the court remarked, shall "comply with any requests or instructions relating to the same including . . . payment of policy benefits at the time of the claim."

23. The contract for sale was executed on March 5, 2003.

24. That same day, a Columbus Life Insurance Representative signed another "individual verification of coverage," recognizing the release of the collateral assignment and noting that there were no liens, assignments, or other claims against the Croft Policy.

25. In 2004, a district judge in the Southern District of Florida placed Mutual Benefits into a receivership.

26. In 2007, the same district judge authorized the receiver to re-designate the beneficial interests in insurance policies. As such, the court ordered that "the beneficial interests

4

in all Policies administered through the receivership be changed to the Receiver, or his designee, as Nominal Beneficiary, so that necessary adjustments . . . can be made by the Receiver without having to process such changes through each of the insurance companies."

27. The court found that "[a]dequate notice . . . has been provided to all parties in interest." "All Insurers which have issued Policies administered by the Receivership," the court continued, "are authorized and directed . . . to designate the Receiver or his designee as Policy Owner/Absolute Assignee without necessity of further instruction or authorization, and are authorized and directed . . . to do so without necessity or signatures or consents from existing Policy Owners/Absolute Assignees and beneficiaries . . . ." "All Insurers are authorized to make payment of all proceeds including death claim proceeds, to the Receiver or such party as the Receiver designates, following the . . . date of entry of this Order."

28. The Receiver served notice of the court's order to all insurers, including Columbus Life Insurance.

29. In 2011, the Mutual Benefits Receiver transferred the Croft Policy to the Trust.

30. Columbus Life memorialized this transfer by having the Trustee sign a change of beneficiary form.

31. <u>Yet again, no contingent beneficiary was marked down</u>.

32. In March 2018, the Trustee, through its agent, advised Columbus Life Insurance of James Croft's death.

33. In response, Columbus Life Insurance reported that its records "indicate[d] that a collateral assignment to Cannella Response Television Inc. was taken against this policy on May 9, 2002" and, yet, there is "no record of th[e] collateral assignment being released."

34. The Trustee replied, instructing Columbus Life Insurance that Cannella's collateral assignment had been extinguished due to the sale of the Croft Policy between the CRG Receiver and the Mutual Benefits Corporation.

35. In September 2018, Columbus refused to pay the Trustee the full amount of death benefit proceeds, and, instead, Columbus Life Insurance told the Trustee that "[a] payment has been forward to Cannella Response Television Inc. aka Cannella Group Inc. for $171,500."

36. Accordingly, in September 2018, Columbus Life only made a partial payment of the death benefit proceeds and failed to remit the entire benefits of the policy

37. Plaintiff has complied with all conditions precedent to the bringing of this action or, in the alternative, Defendant has waived and/or is estopped from raising conditions precedent as a defense.

38. Defendant has refused to pay Plaintiff the remaining death benefit despite Plaintiff's demand.

39. At the time of James Croft's death, the Trust was the only absolute beneficiary listed on the Croft Policy, and there were no contingent beneficiaries—that is, there were no outstanding assignments, liens, or other claims on the policy. As such, the Trust was the only entity entitled to death benefit proceeds of the Croft Policy.

40. Pursuant to the terms of the Croft Policy, once Columbus Life received notice of the death of James Croft, it had a duty to timely pay the full death benefit proceeds to the appropriate beneficiary—the Trust.

41. Upon James Croft's death, the Trust (through its agent) notified Columbus Life of the triggering event to receive the benefits of the policy—Croft's death.

42. To date, Columbus Life has yet to pay the Trust the full amount due and owing.

43. Columbus Life has not made a full payment, and its failure and refusal to do so constitutes a material breach of the life insurance contract.

44. According to the policy, "[i]f payment is delayed for 30 days or more, [Columbus Life Insurance] will add interest at annual rate of at least 4%." Three years of interest at 4% of $171,500 equals $192,914.18.

45. As a direct and proximate result of Columbus Life's material breach of the Croft Policy, the Trust has sustained actual damages in an amount in excess of $75,000.

## COUNT TWO
### (Declaratory Judgment)

46. That Plaintiff re-alleges and reavers the allegations in the foregoing paragraphs.

47. That a dispute exists between the parties to this action.

48. That this Court has jurisdiction to enter a declaratory judgment as to the duties and obligations of the parties pursuant to the terms of the agreements between the parties.

49. That Plaintiff is entitled to a declaratory judgment that Columbus Life has breached the Croft Policy.

WHEREFORE, Plaintiff is entitled to judgment against Columbus Life as follows:

1. In an amount in excess of Seventy-Five Thousand Dollars ($75,000) as compensatory damages;
2. For its costs and attorneys fees;
3. For declaratory judgment as to the rights and obligations of the parties; and
4. For all other relief that this Court deems equitable and just.

Respectfully submitted,

/s/ Donald W. Davis, Jr.
Donald W. Davis, Jr. (#0030559)

Elizabeth Shively Boatwright (#0081264)
BRENNAN, MANNA & DIAMOND, LLC
75 East Market Street
Akron, OH  44308
Telephone: (330) 253-5060
Facsimile: (330) 253-1977
dwdavis@bmdllc.com
esboatwright@bmdllc.com

*Attorneys for Plaintiff*